**Objection Deadline:  January 24, 2023 at 4:00 p.m. (Prevailing Eastern Time)**
**Hearing Date and Time:  February 1, 2023 at 10:00 a.m. (Prevailing Eastern Time)**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Gary T. Holtzer
Kelly DiBlasi
David Griffiths
Lauren Tauro

*Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| ------------------------------------------------------- x | | |
| In re | : | **Chapter 11** |
| | : | |
| **SAS AB**, *et al.*, | : | **Case No. 22-10925 (MEW)** |
| | : | |
| Debtors.[1] | : | **(Jointly Administered)** |
| ------------------------------------------------------- x | | |

**NOTICE OF HEARING ON SUPPLEMENTAL MOTION**
**OF DEBTORS FOR ENTRY OF FINAL ORDER (I) AUTHORIZING**
**DEBTORS TO (A) CONTINUE USING EXISTING CASH MANAGEMENT**
**SYSTEM AND CHECK STOCK, (B) HONOR CERTAIN RELATED**
**OBLIGATIONS, AND (C) CONTINUE INTERCOMPANY TRANSACTIONS**
**AND PROVIDE ADMINISTRATIVE EXPENSE PRIORITY FOR POSTPETITION**
**INTERCOMPANY CLAIMS AGAINST DEBTORS, AND (II) WAIVING**
**COMPLIANCE WITH REQUIREMENTS OF 11 U.S.C. § 345(b) SCHEDULED**
**<u>FOR FEBRUARY 1, 2023 AT 10:00 A.M. (PREVAILING EASTERN TIME)</u>**

**PLEASE TAKE NOTICE** that, on January 16, 2023, SAS AB and its debtor

subsidiaries, as debtors and debtors in possession in the above-captioned chapter 11 cases

(collectively, the "**Debtors**"), filed the *Supplemental Motion of Debtors for Entry of Final Order*

*(I) Authorizing Debtors to (A) Continue Using Existing Cash Management System and Check*

---

[1] The Debtors in these chapter 11 cases are SAS AB, SAS Danmark A/S, SAS Norge AS, SAS Sverige AB, Scandinavian Airlines System Denmark-Norway-Sweden, Scandinavian Airlines of North America Inc. (2393), Gorm Asset Management Ltd., Gorm Dark Blue Ltd., Gorm Deep Blue Ltd., Gorm Sky Blue Ltd., Gorm Warm Red Ltd., Gorm Light Blue Ltd., Gorm Ocean Blue Ltd., and Gorm Engine Management Ltd. The Debtors' mailing address is AVD kod: STOUU-T, SE-195 87 Stockholm, Sweden.

*Stock, (B) Honor Certain Related Obligations, and (C) Continue Intercompany Transactions and Provide Administrative Expense Priority for Postpetition Intercompany Claims Against Debtors, and (II) Waiving Compliance with Requirements of 11 U.S.C. § 345(b)* (the "**Motion**").

**PLEASE TAKE FURTHER NOTICE** that a hearing to consider entry of an order granting the relief requested in the Motion (the "**Hearing**") will be conducted before the Honorable Michael E. Wiles, United States Bankruptcy Judge for the Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**"), on **February 1, 2023 at 10:00 a.m. (Prevailing Eastern Time)**.

**PLEASE TAKE FURTHER NOTICE** that any responses or objections (the "**Objections**") to the Motion shall (i) be in writing, (ii) conform to the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the Local Bankruptcy Rules for the Southern District of New York (the "**Local Bankruptcy Rules**"), and the *Order Implementing Certain Notice and Case Management Procedures* [ECF No. 292] (the "**Case Management Order**"), (iii) be filed with the Bankruptcy Court by (a) attorneys practicing in the Bankruptcy Court, including attorneys admitted *pro hac vice*, electronically in accordance with General Order M-399 (which can be found at www.nysb.uscourts.gov) and (b) all other parties in interest on a CD-ROM, in text-searchable portable document format (PDF) (with two single-sided hard copies delivered to the Judge's Chambers), in accordance with the customary practices of the Bankruptcy Court and General Order M-399, to the extent applicable, and (iv) be served in accordance with General Order M-399, the Bankruptcy Rules, the Local Bankruptcy Rules, and the Case Management Order, upon (a) the attorneys for the Debtors, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York  10153 (Attn:  Gary Holtzer, Kelly DiBlasi,  David Griffiths, and Lauren Tauro), (b) the Office of the United States Trustee for Region 2 (Attn: Greg Zipes, Esq. & Annie

Wells, Esq.), and (c) the attorneys for the Official Committee of Unsecured Creditors (Attn: Brett H. Miller, Todd M. Goren, Debra M. Sinclair, Craig A. Damast, and James H. Burbage), by no later than **January 24, 2023 at 4:00 p.m. (Prevailing Eastern Time)** (the "**Objection Deadline**").

**PLEASE TAKE FURTHER NOTICE** that if no Objections are timely filed and served with respect to the Motion by the Objection Deadline, the Bankruptcy Court may grant the relief requested in the Motion without further notice or opportunity to be heard.

**PLEASE TAKE FURTHER NOTICE** that any objecting parties are required to attend any Hearing and failure to appear may result in relief being granted upon default.

Dated:  January 16, 2023
　　　　New York, New York

　　　　　　　　　　　　　　　 /s/  *Gary T. Holtzer*
　　　　　　　　　　　　　　 WEIL, GOTSHAL & MANGES LLP
　　　　　　　　　　　　　　 767 Fifth Avenue
　　　　　　　　　　　　　　 New York, New York 10153
　　　　　　　　　　　　　　 Telephone: (212) 310-8000
　　　　　　　　　　　　　　 Facsimile: (212) 310-8007
　　　　　　　　　　　　　　 Gary T. Holtzer
　　　　　　　　　　　　　　 Kelly DiBlasi
　　　　　　　　　　　　　　 David Griffiths
　　　　　　　　　　　　　　 Lauren Tauro

　　　　　　　　　　　　　　 *Attorneys for Debtors*
　　　　　　　　　　　　　　 *and Debtors in Possession*

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Gary T. Holtzer
Kelly DiBlasi
David Griffiths
Lauren Tauro

*Attorneys for Debtors
and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x
In re                                                          :    **Chapter 11**
                                                               :
**SAS AB, *et al.*,**                                          :    **Case No. 22-10925 (MEW)**
                                                               :
                       Debtors.[1]                             :    **(Jointly Administered)**
-------------------------------------------------------------x

**SUPPLEMENTAL MOTION OF DEBTORS FOR
ENTRY OF FINAL ORDER (I) AUTHORIZING DEBTORS TO
(A) CONTINUE USING EXISTING CASH MANAGEMENT SYSTEM AND CHECK
STOCK, (B) HONOR CERTAIN RELATED OBLIGATIONS, AND (C) CONTINUE
INTERCOMPANY TRANSACTIONS AND PROVIDE ADMINISTRATIVE EXPENSE
PRIORITY FOR POSTPETITION INTERCOMPANY CLAIMS AGAINST DEBTORS,
AND (II) WAIVING COMPLIANCE WITH REQUIREMENTS OF 11 U.S.C. § 345(b)**

SAS AB and its debtor subsidiaries, as debtors and debtors in possession in the

above-captioned chapter 11 cases (collectively, the "**Debtors**"), respectfully represent as follows

in support of this motion (the "**Motion**"):

---

[1] The Debtors in these chapter 11 cases are SAS AB, SAS Danmark A/S, SAS Norge AS, SAS Sverige AB, Scandinavian Airlines System Denmark-Norway-Sweden, Scandinavian Airlines of North America Inc. (2393), Gorm Asset Management Ltd., Gorm Dark Blue Ltd., Gorm Deep Blue Ltd., Gorm Sky Blue Ltd., Gorm Warm Red Ltd., Gorm Light Blue Ltd., Gorm Ocean Blue Ltd., and Gorm Engine Management Ltd.  The Debtors' mailing address is AVD kod: STOUU-T, SE-195 87 Stockholm, Sweden.

## Background

1.      On July 5, 2022 (the "**Commencement Date**"), each Debtor commenced with the Court a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").  The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these chapter 11 cases.  On July 22, 2022, the Office of the United States Trustee for Region 2 (the "**U.S. Trustee**") appointed the Official Committee of Unsecured Creditors (the "**Creditors' Committee**") [ECF No. 75].

2.      The Debtors' chapter 11 cases are being jointly administered for procedural purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

3.      Information regarding the Debtors' business and capital structure and the circumstances leading to the commencement of these chapter 11 cases is set forth in the *Declaration of Erno Hildén Pursuant to Rule 1007-2 of Local Bankruptcy Rules for Southern District of New York*, dated July 5, 2022 [ECF No. 3] (the "**Hildén Declaration**"), and the *Declaration of Michael Healy in Support of First Day Motions and Applications*, dated July 5, 2022 [ECF No. 4].

4.      On the Commencement Date, the Debtors filed the *Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing Debtors to (A) Continue Using Existing Cash Management System and Check Stock, (B) Honor Certain Related Obligations, and (C) Continue Intercompany Transactions and Provide Administrative Expense Priority for Postpetition Intercompany Claims Against Debtors, (II) Waiving Compliance with Requirements of 11 U.S.C.*

*§ 345(b), and (III) Granting Related Relief* [ECF No. 15] (the "**Cash Management Motion**").[2] On (i) July 7, 2022, the Court entered the *Interim Order (I) Authorizing Debtors to (A) Continue Using Existing Cash Management System and Check Stock, (B) Honor Certain Related Obligations, and (C) Continue Intercompany Transactions and Provide Administrative Expense Priority for Postpetition Intercompany Claims Against Debtors, (II) Waiving Compliance with Requirements of 11 U.S.C. § 345(b), and (III) Granting Related Relief* [ECF No. 44], (ii) August 4, 2022, the Court entered the *Second Interim Order (I) Authorizing Debtors to (A) Continue Using Existing Cash Management System and Check Stock, (B) Honor Certain Related Obligations, and (C) Continue Intercompany Transactions and Provide Administrative Expense Priority for Postpetition Intercompany Claims Against Debtors, (II) Waiving Compliance with Requirements of 11 U.S.C. § 345(b), and (III) Granting Related Relief* [ECF No. 169], (iii) October 12, 2022, the Court entered the *Third Interim Order (I) Authorizing Debtors to (A) Continue Using Existing Cash Management System and Check Stock, (B) Honor Certain Related Obligations, and (C) Continue Intercompany Transactions and Provide Administrative Expense Priority for Postpetition Intercompany Claims Against Debtors, (II) Waiving Compliance with Requirements of 11 U.S.C. § 345(b), and (III) Granting Related Relief* [ECF No. 478], and (iv) November 28, 2022, the Court entered the *Fourth Interim Order (I) Authorizing Debtors to (A) Continue Using Existing Cash Management System and Check Stock, (B) Honor Certain Related Obligations, and (C) Continue Intercompany Transactions and Provide Administrative Expense Priority for Postpetition Intercompany Claims Against Debtors,*

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Cash Management Motion.

*(II) Waiving Compliance with Requirements of 11 U.S.C. § 345(b), and (III) Granting Related*

*Relief* [ECF No. 640] (the "**Fourth Interim Order**" and, collectively, the "**Interim Orders**").

5.     Pursuant to the Interim Orders, the Court granted the Debtors extensions of

the time to come into compliance with section 345(b) of the Bankruptcy Code with respect to the

Bank Accounts or to make such other arrangements as agreed to by the U.S. Trustee.  The Fourth

Interim Order extended such deadline to the date hereof.[3]

### Jurisdiction

6.     The Court has jurisdiction to consider this matter pursuant to

28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference M-431, dated January

31, 2012 (Preska, C.J.).  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper

before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### Relief Requested

7.     By this Motion, pursuant to sections 105(a), 345(b), 363, 364(a), and 503(b)

of the Bankruptcy Code, the Debtors request that the Court, on a final basis, (i) authorize the

Debtors to (a) continue using the Cash Management System, (b) honor certain prepetition

obligations related to the Cash Management System, and (c) continue engaging in Intercompany

Transactions between and among the Debtors and their non-debtor affiliates in the ordinary course

of business and consistent with their prepetition practices and to provide administrative expense

priority for postpetition Intercompany Claims against the Debtors, (ii) waive the requirements of

section 345(b) of the Bankruptcy Code, and (iii) grant related relief.

---

[3] Pursuant to Rule 9006-2 of the Local Bankruptcy Rules for the Southern District of New York, the filing of this Motion prior to the expiration of the deadline set forth in the Fourth Interim Order automatically extends the deadline to come into compliance with section 345(b) of the Bankruptcy Code until such time as the Court rules on this Motion.

8.      A proposed form of order granting the relief requested herein on a final basis is annexed hereto as **Exhibit A** (the "**Proposed Final Order**").

9.      In support of this Motion, the Debtors submit the declaration of Michael Healy, a Senior Managing Director at FTI Consulting, Inc., a copy of which is annexed hereto as **Exhibit B** (the "**Healy Declaration**").

## Cash Management System and Bank Accounts

10.     As set forth more fully in the Cash Management Motion, the Cash Management System is comprised of approximately 300 Bank Accounts at various Banks in Sweden, Denmark, Norway, Finland, China, Lithuania, Poland, Russia, the United Kingdom, the United States, Ireland, Canada, India, Spain, and Japan. The Debtors' treasury department located in Stockholm, Sweden (the "**Treasury**") manages the Bank Accounts and the Cash Management System as a whole and oversees the proper collection, processing, and disbursement of funds, check processing and issuance, wire transfers, and automated clearing house transactions.

11.     To manage their cash, the Debtors and their Non-Debtor Affiliates have entered into cash pool agreements (the "**Cash Pool Agreements**") with Skandinaviska Enskilda Banken AB ("**SEB**") and Nordea Bank Abp ("**Nordea**"). Neither SEB nor Nordea is an Authorized Depository under the UST Guidelines.

12.     Under the Cash Pool Agreements, the Debtors and their Non-Debtor Affiliates have established various Bank Accounts that the Debtors use for processing transactions and for receiving, holding, and dispensing funds. When a cash-generating transaction occurs, the applicable SAS entity receives the funds into a transaction account (the "**Transaction Accounts**"), which is linked to a master account in the applicable jurisdiction (each, a "**Master Account**") owned by the Consortium. The Transaction Accounts and Master Accounts, taken together, form

5

part of an organization-wide cash pool (the "**Cash Pool**") at each Bank where the Consortium maintains Master Accounts.  The Master Accounts and the Transaction Accounts are maintained at various branches of SEB and Nordea in Denmark, Sweden, Norway, and Finland.  As of December 31, 2022, the Debtors held approximately $145 million in the Cash Pool.

13.    In addition to the Transaction Accounts and Master Accounts, the Debtors maintain standalone accounts (the "**Standalone Accounts**") that hold all of the Debtors' remaining cash.  The Debtors principally use the Standalone Accounts to hold cash and make payments in certain jurisdictions where the Debtors are required by law to pay salaries and taxes out of accounts with domestic banks.  The Debtors also use the Standalone Accounts to pay obligations on account of local accounts payable and direct debits, as well as to satisfy deposit requirements relating to letters of credit, guarantees from local banks, and pension obligations.  As of December 31, 2022, the Debtors held approximately $91 million in the Standalone Accounts, excluding the SANA Account (as defined below).[4]

14.    In addition to the Standalone Accounts described above, Scandinavian Airlines of North America Inc. USA ("**SANA**") maintains a Standalone Account at J.P. Morgan Chase & Co. in New York (the "**SANA Account**"), which the Debtors have used since August 2022 to hold the proceeds received in connection with their debtor-in-possession ("**DIP**") financing.  As of December 31, 2022, the balance of the SANA Account was approximately $287 million.[5]

---

[4] The vast majority of the Standalone Accounts are with SEB and Nordea.  The Debtors maintain a handful of Standalone Accounts with other Banks, which—with the exception of the SANA Account and a professional fee escrow account at Citibank—have small balances and are principally used to hold local currencies in the jurisdictions where the Debtors operate.  As of December 31, 2022, these Standalone Accounts (excluding the SANA Account) held approximately 5% of the Debtors' cash across 21 Bank Accounts.

[5] Because the SANA Account is maintained at an Authorized Depository, the Debtors do not seek a waiver of section 345(b) with respect to such Bank Account.

15.     In order to come into compliance with section 345(b) of the Bankruptcy Code, the Debtors have explored the possibility of obtaining a bond secured by the undertaking of a corporate surety with respect to the Bank Accounts.  Notwithstanding the Debtors' extensive efforts, which involved outreach to a broad pool of insurers in the Nordic, U.S., and international markets, the Debtors have been unable to locate a counterparty willing to provide such a bond. Accordingly, the Debtors file this Motion seeking a waiver of section 345(b) with respect to the Bank Accounts (other than the SANA Account) from the Court.

**Waiver of Requirements of Section 345(b) of the Bankruptcy Code and
UST Guidelines Regarding Authorized Depositories is Warranted**

16.     Section 345 of the Bankruptcy Code governs a debtor's cash deposits during a chapter 11 case and requires deposits of money as "will yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment."  11 U.S.C. § 345(a). For deposits that are not "insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States or backed by the full faith and credit of the United States," section 345(b) of the Bankruptcy Code requires that the debtor obtain from the "entity with which such money is deposited or invested a bond in favor of the United States secured by the undertaking of a corporate surety, . . . unless the court for cause orders otherwise."  *Id.* § 345(b).  Additionally, the UST Guidelines generally require chapter 11 debtors, among other things, to deposit all estate funds into an account with an Authorized Depository.

17.     In complex chapter 11 cases such as these, involving debtors with far-reaching, global operations, strict adherence to the requirements of section 345(b) of the Bankruptcy Code would be inconsistent with the value-maximizing purpose of chapter 11 by unduly disrupting the debtor's cash management system and banking relationships.  As a result, in 1994, to avoid "needlessly handcuff[ing] larger, more sophisticated debtors," Congress amended

section 345(b) to provide that its strict requirements may be waived or modified if the court so

orders "for cause."  140 Cong. Rec. H. 10,767 (Oct. 4, 1994); *see* 11 U.S.C. § 345(b).

18.    The Bankruptcy Code does not define what constitutes "cause."  Courts

accordingly consider the "totality of the circumstances" in determining whether "cause" exists to

waive compliance with section 345(b) of the Bankruptcy Code, with particular regard to the

following factors: (i) the sophistication of the debtor's business; (ii) the size of the debtor's

business operations; (iii) the amount of investments involved; (iv) the bank ratings (Moody's and

S&P) of the financial institutions where debtor-in-possession funds are held; (v) the complexity of

the case; (vi) the safeguards in place within the debtor's own business of insuring the safety of the

funds; (vii) the debtor's ability to reorganize in the face of a failure of one or more of the financial

institutions; (viii) the benefit to the debtor; (ix) the harm, if any, to the estate; and (x) the

reasonableness of the debtor's request for relief from the section 345(b) requirements in light of

the overall circumstances of the case.  *See In re Ditech Holding Corp.*, 605 B.R. 10, 17 (Bankr.

S.D.N.Y. 2019); *In re Serv. Merch. Co.*, 240 B.R. 894, 896 (Bankr. M.D. Tenn. 1999); *see also In

re King Mountain Tobacco Co.*, 623 B.R. 323, 332 (Bankr. E.D. Wash. 2020) (citing *In re Services

Merchandise Co.*).

19.    Here, "cause" exists to waive compliance with section 345(b) for several

reasons.

20.    First, the Debtors' business is highly sophisticated.  The Debtors operate an

international airline business with operations in countries throughout the world.  As described in

the Hildén Declaration, the Debtors operated 212 routes in 2021, serving destinations in 34

countries.  The Debtors averaged more than 270 daily scheduled flights in 2021 and provided

service to approximately 7.5 million customers worldwide.  The Debtors' and their Non-Debtor

Affiliates also operate a substantial cargo business that makes them the leading provider of airfreight solutions to, from, and within all of Scandinavia. This operational complexity demands a highly sophisticated cash management system. Accordingly, the Debtors specifically designed the Cash Management System to processes thousands of consumer, business, and foreign exchange transactions and receive and transfer millions in legal tender of various currencies within and outside of the SAS enterprise on a daily basis. These complex, multifaceted, and global operations—of which the Debtors' existing Cash Management System is an integral part—make the Debtors a paradigmatic example of the kind of "larger, more sophisticated debtors" that Congress sought to exempt from compliance with section 345(b) of the Bankruptcy Code.

21.    Second, the Debtors' chapter 11 cases are indisputably complex. The SAS corporate structure includes more than 60 separate corporate entities organized in various jurisdictions throughout the world, almost all of which participate in the Cash Pool and rely on Intercompany Transactions with the Consortium to finance their operations. As of the Commencement Date, the Debtors' capital structure included approximately $1.35 billion of funded debt of various levels of structural and contractual seniority held by a diverse array of constituencies, including governments, financial institutions, investment funds, and retail investors. In addition to the Debtors' funded debt, the Debtors have substantial liabilities on account of aircraft lease and financing obligations, as well as for claims from other general unsecured creditors. As with the sophistication of the Debtors' business operations, the complexity of these cases provides cause to waive the requirements of section 345(b). The complexity of these chapter 11 cases and the legal and business issues that they present require the full attention and efforts of the Debtors, their management, employees, and advisors. Having to move Bank Accounts to Authorized Depositories or set up an entirely new cash management system in the

midst of complex chapter 11 cases would be a massive diversion that will detract from the Debtors' ability to effectively navigate these proceedings and successfully reorganize.

22.    Third, both SEB and Nordea, which hold the overwhelming majority of the Debtors' cash,[6] have high credit ratings from S&P and Moody's.  On November 11, 2022, S&P gave SEB an Issuer Credit Rating of A+ with a "Stable" outlook, forecasting that SEB's "capitalization will remain solid" and that its "asset quality is expected to remain robust."[7] Moody's reached a similar conclusion in its credit opinion of December 22, 2022, providing SEB with a long-term deposit and senior unsecured debt rating of Aa3 and noting that this rating "reflects the bank's strong credit quality and solid capitalisation," which Moody's "expect[s] will demonstrate continued resilience despite the economic downturn."[8]  On March 31, 2022, S&P gave Nordea an Issuer Credit Rating of AA-, and on October 11, 2022, Moody's affirmed Nordea's Aa3 long-term deposit and senior unsecured debt rating.  Such strong ratings from the world's leading credit agencies establish beyond any doubt that the Debtors' funds held at SEB and Nordea are, consistent with the underlying purpose of section 345, "invested prudently and safely."  140 Cong. Rec. H 10,767 (Oct. 4, 1994).  Requiring the Debtors to transfer their cash to an Authorized Depository will therefore do nothing to reduce creditors' exposure to risk.

23.    The legislative history of Congress's 1994 amendment to section 345(b) underscores the critical importance of this factor in assessing whether to grant a waiver for cause. As noted, the purpose of section 345 of the Bankruptcy Code is to protect creditors from the risk of loss of the debtor's cash.  To that end, section 345(b) ordinarily requires that "all investments [of the debtor's cash] be . . . FDIC insured, collateralized or bonded."  *Id.*  The commentary to the

---

[6] Excluding the SANA Account, which is maintained at an Authorized Depository.

[7] S&P November 11, 2022 Credit Report on SEB.

[8] Moody's December 22, 2022 Credit Opinion on SEB.

1994 amendment states that "this requirement is wise in the case of a small debtor with limited funds that cannot afford *a risky investment* to be lost." *Id.* (emphasis added). Here, the Debtors' cash is not subject to a "risky investment." Rather, the Debtors' cash is deposited with reputable, well-capitalized financial institutions that have strong credit ratings and stable outlooks. As a result, the driving force behind the requirements of section 345(b) is not applicable here, where the Debtors' cash is not subject to any meaningful risk. Healy Decl. ¶ 14.

24.     Fourth, requiring the Debtors to comply with section 345(b) of the Bankruptcy Code will cause substantial harm to the Debtors' estates and, as established above, provide no benefit to creditors. As explained in the Cash Management Motion, the Debtors' Cash Management System is an integrated system of Bank Accounts that are used to process transactions and facilitate cash transfers between the more than 60 entities in the SAS corporate structure. The Cash Management System is specifically tailored to the particular needs of the Debtors' operations and is indispensable to the Debtors' ability to operate their business in the ordinary course. Healy Decl. ¶ 11. For example, because the Debtors operate in over 30 countries, the Debtors routinely have to process transactions in foreign currencies, which then must be converted into the local currencies that the Debtors use to pay expenses and fund their operations. The Debtors also frequently engage in foreign exchange hedging transactions to reduce their exposure to fluctuations in global currency values. As of now, SEB provides these services to the Debtors, and the Debtors' Cash Management System is arranged such that these currency conversions and hedging transactions can take place seamlessly and at minimal expense to the Debtors. Upending this arrangement will impose a substantial and entirely needless burden on the Debtors and their estates, as the Debtors will need to engage a new counterparty to execute these

functions, and there is no guarantee that any of the Authorized Depositories will be able to provide these services as efficiently as SEB.

25.     Even if these functions could be performed efficiently by an Authorized Depository, requiring the Debtors to move their funds into Authorized Depositories would still severely hamper the Debtors' business operations and harm the Debtors' estates.  As noted above, the Bank Accounts form an integrated, company-wide Cash Pool that is used by the Treasury to manage and effectuate the flow of cash throughout the entire SAS enterprise.  The Treasury utilizes the Cash Pool on a daily basis to, among other things, finance ordinary course Intercompany Transactions, manage the company's liquidity, and track the flow of cash through the business.  If the Debtors are not permitted to continue utilizing their existing Cash Management System, the Debtors may need to revamp fundamental aspects of their business operations, which would be a massive and costly logistical nightmare.  Healy Decl. ¶¶ 11-12.

26.     Moreover, setting up new bank accounts with Authorized Depositories and transferring funds out of the Debtors' hundreds of Bank Accounts will require an extraordinary expenditure of time and resources.  Separating the Debtors' core Scandinavia-based business operations from the cash the Debtors use to support those operations will inevitably result in, among other things, delays in making and receiving payments and increased costs.  Healy Decl. ¶ 11.  Where, as here, imposing these costs on the Debtors and their estates does nothing to protect creditors' interests, requiring compliance with section 345(b) is contrary to the underlying purpose of the statute as well as the expressed intent of Congress.

27.     Finally, there are meaningful safeguards in place within the Debtors' business to ensure the safety of the Debtors' deposits.  As noted, the Cash Management System is overseen by the Treasury, which ensures the proper collection, processing, and disbursement of

funds.  The Treasury keeps a watchful eye over the entire Cash Management System and actively monitors it for irregularities.  In the unlikely event of any financial irregularity or adverse event affecting a Bank Account, personnel in the Debtors' Treasury are well-positioned to detect any such occurrence and act quickly to correct it by moving cash into other, unaffected Bank Accounts. Healy Decl. ¶ 13.

28.    In light of the foregoing, the relief requested herein is warranted and in the best interests of the estates.  Accordingly, the Court should waive compliance with section 345(b) of the Bankruptcy Code for cause so that the Debtors may continue to use their existing Bank Accounts and Cash Management System.

## Notice

19.    Notice of this Supplemental Motion will be provided in accordance with the procedures set forth in the *Order Implementing Certain Notice and Case Management Procedures* [ECF No. 292].  The Debtors respectfully submit that no further notice is required.

20.    No previous request for the relief sought herein has been made by the Debtors to this or any other Court.

WHEREFORE the Debtors respectfully request entry of the Proposed Final Order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated: January 16, 2023
        New York, New York

/s/ Gary T. Holtzer
_____
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000

Facsimile: (212) 310-8007
Gary T. Holtzer
Kelly DiBlasi
David Griffiths
Lauren Tauro

*Attorneys for Debtors*
*and Debtors in Possession*

**<u>Exhibit A</u>**

**Proposed Final Order**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| SAS AB, *et al.*, | : | Case No. 22-10925 (MEW) |
| | : | |
| Debtors.[1] | : | (Jointly Administered) |
| | : | Re: ECF Nos. 15, 44, 169, 478 & 640 |

--------------------------------------------------------------x

### FINAL ORDER (I) AUTHORIZING DEBTORS TO (A) CONTINUE USING EXISTING CASH MANAGEMENT SYSTEM AND CHECK STOCK, (B) HONOR CERTAIN RELATED OBLIGATIONS, AND (C) CONTINUE INTERCOMPANY TRANSACTIONS AND PROVIDE ADMINISTRATIVE EXPENSE PRIORITY FOR POSTPETITION INTERCOMPANY CLAIMS AGAINST DEBTORS, (II) WAIVING COMPLIANCE WITH REQUIREMENTS OF 11 U.S.C. § 345(b), AND (III) GRANTING RELATED RELIEF

Upon the initial motion [ECF No. 15] (the "**Motion**")[2] of SAS AB and its debtor

subsidiaries, as debtors and debtors in possession in the above-captioned chapter 11 cases

(collectively, the "**Debtors**"), pursuant to sections 105(a), 345(b), 363, 364(a), and 503(b) of

the Bankruptcy Code for entry of an order (i) authorizing the Debtors to (a) continue using the

existing Cash Management System, including the continued maintenance of the Bank Accounts

and check stock, (b) honor certain prepetition obligations related to the Cash Management System,

and (c) continue Intercompany Transactions, (ii) waiving the requirements of section 345(b) of the

Bankruptcy Code, and (iii) granting related relief, all as more fully set forth in the Motion; and

upon the supplemental motion (the "**Supplemental Motion**"), dated January 16, 2023, of the

Debtors pursuant to sections 105(a), 345(b), 363, 364(a), and 503(b) of the Bankruptcy Code for

---

[1] The Debtors in these chapter 11 cases are SAS AB, SAS Danmark A/S, SAS Norge AS, SAS Sverige AB, Scandinavian Airlines System Denmark-Norway-Sweden, Scandinavian Airlines of North America Inc. (2393), Gorm Asset Management Ltd., Gorm Dark Blue Ltd., Gorm Deep Blue Ltd., Gorm Sky Blue Ltd., Gorm Warm Red Ltd., Gorm Light Blue Ltd., Gorm Ocean Blue Ltd., and Gorm Engine Management Ltd. The Debtors' mailing address is AVD kod: STOUU-T, SE-195 87 Stockholm, Sweden.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

entry of a final order (i) authorizing the Debtors to (a) continue using the existing Cash Management System, including the continued maintenance of the Bank Accounts and check stock, (b) honor certain prepetition obligations related to the Cash Management System, and (c) continue Intercompany Transactions, (ii) waiving the requirements of section 345(b) of the Bankruptcy Code, and (iii) granting related relief, all as more fully set forth in the Supplemental Motion; and this Court having jurisdiction to consider the Motion and Supplemental Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference M-431*, dated January 31, 2012 (Preska, C.J.); and consideration of the Motion and the Supplemental Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion and Supplemental Motion having been provided, and such notice having been adequate and appropriate under the circumstances, and it appearing that no other or further notice need be provided; and this Court having reviewed the Motion and Supplemental Motion; and this Court having held an initial hearing on July 7, 2022 to consider the relief requested in the Motion on an interim basis; and this Court having entered the (i) *Interim Order (I) Authorizing Debtors to (A) Continue Using Existing Cash Management System and Check Stock, (B) Honor Certain Related Obligations, and (C) Continue Intercompany Transactions and Provide Administrative Expense Priority for Postpetition Intercompany Claims against Debtors, (II) Waiving Compliance with Requirements of 11 U.S.C. § 345(b), and (III) Granting Related Relief* on July 7, 2022 [ECF No. 44], (ii) *Second Interim Order (I) Authorizing Debtors to (A) Continue Using Existing Cash Management System and Check Stock, (B) Honor Certain Related Obligations, and (C) Continue Intercompany Transactions and Provide Administrative Expense Priority for Postpetition Intercompany Claims against Debtors,*

2

*(II) Waiving Compliance with Requirements of 11 U.S.C. § 345(b), and (III) Granting Related Relief* on August 4, 2022 [ECF No. 169], (iii) *Third Interim Order (I) Authorizing Debtors to (A) Continue Using Existing Cash Management System and Check Stock, (B) Honor Certain Related Obligations, and (C) Continue Intercompany Transactions and Provide Administrative Expense Priority for Postpetition Intercompany Claims against Debtors, (II) Waiving Compliance with Requirements of 11 U.S.C. § 345(b), and (III) Granting Related Relief* on October 12, 2022 [ECF No. 478], and (iv) *Fourth Interim Order (I) Authorizing Debtors to (A) Continue Using Existing Cash Management System and Check Stock, (B) Honor Certain Related Obligations, and (C) Continue Intercompany Transactions and Provide Administrative Expense Priority for Postpetition Intercompany Claims against Debtors, (II) Waiving Compliance with Requirements of 11 U.S.C. § 345(b), and (III) Granting Related Relief* on November 28, 2022 [ECF No. 640]; and upon any final hearing on the Motion and Supplemental Motion; and upon the Healy Declaration; and the record of all proceedings before this Court; and this Court having determined that the legal and factual bases set forth in the Motion and Supplemental Motion establish just cause for the relief granted herein; and it appearing that the relief requested in the Motion and Supplemental Motion and granted herein is in the best interests of the Debtors, their estates, their creditors, and all parties in interest; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      The Motion and Supplemental Motion are granted on a final basis to the extent set forth herein.

2.      The Debtors are authorized, but not directed, pursuant to sections 105(a) and 363 of the Bankruptcy Code to continue using the Cash Management System and to collect,

concentrate, and disburse cash in accordance with the Cash Management System and to implement

changes to the Cash Management System in the ordinary course of business without further order

of this Court, as consistent with this Final Order.

3.     The Debtors are further authorized, but not directed, pursuant to sections

105(a) and 363 of the Bankruptcy Code to continue to (i) operate under the Merchant Services

Agreements in the ordinary course and in a manner consistent with past practices and (ii) pay or

reimburse the Merchant Services Obligations, as provided under, and in the manner set forth in,

the Merchant Services Agreements.  For the avoidance of doubt, the Debtors are authorized to

perform under the Merchant Service Agreements as to all payment processing methods covered

thereunder, including credit card payments, debit card payments, bank account payments, and

inter-account transfers.

4.     The automatic stay in effect in these cases pursuant to section 362 of the

Bankruptcy Code is hereby modified to the extent necessary to permit U.S. Bank National

Association and Elavon Financial Services DAC (Norway Branch) (together with any affiliates,

"**Elavon**") to follow its normal setoff and processing procedures in respect of undisputed claims

and the netting of refunds, chargebacks, and other credit items in accordance with its Merchant

Services Agreements with the Debtors, and continue its holdback procedures that existed as of the

Commencement Date provided that the amount of the holdback does not exceed $22,475,587.33,

in each case, in the ordinary course as if no bankruptcy filing had occurred.

5.     The Debtors are further authorized to (i) continue to use, with the same

account numbers, all of the Bank Accounts in existence as of the Commencement Date, (ii) treat

the Bank Accounts for all purposes as accounts of the Debtors as debtors in possession, and

(iii) use, in their present form, check stock existing immediately before the Commencement Date, without reference to the Debtors' status as debtors in possession.

6.     The Debtors are authorized to open new bank accounts; *provided*, *however*, that such opening shall be timely indicated on the Debtors' monthly operating reports and notice of such opening shall be provided to the U.S. Trustee and the Creditors' Committee.

7.     Nothing contained herein shall prevent the Debtors from closing any of their Bank Account(s) in the ordinary course of business and in accordance with prepetition practices as the Debtors may deem necessary and appropriate.  The Banks are authorized to honor the Debtors' requests to close such Bank Accounts, and the Debtors shall give notice of the closure of any such Bank Account to the U.S. Trustee and the Creditors' Committee.

8.     The relief, rights, and responsibilities provided for in this Final Order shall be deemed to apply to any and all Bank Accounts maintained in the Debtors' names, including any new bank accounts, whether or not such Bank Accounts are identified on **<u>Exhibit D</u>** to the Motion, and any banks at which new accounts are opened shall be subject to the rights and obligations of this Final Order.

9.     Except as otherwise expressly provided in this Final Order, the Banks are authorized, but not directed, to continue to service and administer the Bank Accounts as accounts of the Debtors as debtors in possession, without interruption and in the ordinary course of business, and to receive, process, honor, and pay any and all checks, drafts, wires, and ACH transfers issued or initiated by or on behalf of the Debtors (to the extent the Debtors have sufficient funds, whether deposited prior to or after the Commencement Date in the requisite Bank Account or otherwise available to cover and permit payment thereof) after the Commencement Date; *provided*, *however*, that any payments drawn, issued, or made prior to the Commencement Date shall not be honored

by the Banks absent receipt of direction from the Debtors and entry of a separate order of this Court authorizing such prepetition payment.

10.     The Banks are authorized, but not directed, to debit the Bank Accounts in the ordinary course of business without need for further order of this Court for (i) all checks, items, and other payment orders drawn on the Bank Accounts that are cashed at such Banks' counters or exchanged for cashier's checks by the payees thereof after the Commencement Date; *provided*, that such checks, items, and other payment orders are authorized pursuant to an order of this Court, (ii) all checks, ACH entries, wire transfers, other electronic transfers, and other items deposited or credited to any of the Bank Accounts prior to the Commencement Date that have been dishonored, reversed, or returned unpaid for any reason, together with any fees and costs in connection therewith, to the same extent the Debtors were responsible for such costs and fees prior to the Commencement Date, and (iii) all undisputed prepetition amounts outstanding as of the date hereof, if any, owed to any Banks on account of (a) Bank Fees for the maintenance of the Cash Management System or (b) repayment for advances made by the Banks on behalf of the Debtors in connection with ACH disbursement transactions.

11.     The Banks may rely on the representations of the Debtors with respect to whether any check, item, or other payment order drawn or issued by the Debtors prior to the Commencement Date should be honored pursuant to this or any other order of this Court, and such Banks shall not have any liability to any party for relying on such representations by the Debtors as provided for herein, and shall not be liable to any party on account of (i) following the Debtors' representations, instructions, directions, or presentations as to any order of this Court (without any duty of further inquiry) and (ii) honoring of any prepetition checks, drafts, wires, or ACH payments

upon a representation by the Debtors that this Court has authorized such prepetition check, draft, wire, or ACH payment.

12.    The Debtors will instruct the Banks as to which checks, drafts, wire transfers (excluding any wire transfers that the Banks are obligated to settle), or other items presented, issued, or drawn, shall not be honored.  Except for those checks, drafts, wires, or other ACH transfers that are authorized or required to be honored under an order of this Court, the Debtors shall instruct or request any Bank to not pay or honor any check, draft, or other payment item issued on a Bank Account prior to the Commencement Date but presented to such Bank for payment after the Commencement Date.

13.    The Debtors are authorized, but not directed, to issue new postpetition checks, or effect new electronic funds transfers, and to replace any prepetition checks or electronic fund transfer requests that may be lost or dishonored or rejected as a result of the commencement of the Debtors' chapter 11 cases with respect to any prepetition amounts that are authorized to be paid pursuant to this Final Order.

14.    The Debtors are authorized pursuant to sections 363(c) and 364(a) of the Bankruptcy Code to continue to engage in the Intercompany Transactions, including Intercompany Financing Transactions, in the ordinary course of business.

15.    All Intercompany Claims against Debtors arising after the Commencement Date as a result of the Intercompany Transactions shall be accorded administrative expense priority status in accordance with sections 364(a) and 503(b) of the Bankruptcy Code.

16.    The Debtors shall continue, in the ordinary course of business, to maintain accurate records of all transfers within the Cash Management System, including Intercompany

7

Transactions, so that all postpetition transfers and transactions shall be adequately and promptly documented in, and readily ascertainable from, their books and records.

17.     The requirements provided in section 345(b) of the Bankruptcy Code are hereby waived as to the Bank Accounts to the extent that such Bank Accounts are not maintained at Authorized Depositories.

18.     The Debtors shall provide five business days' notice (or as much notice as is reasonably practicable under the circumstances) to the Creditors' Committee before (i) materially modifying the Cash Management System outside the ordinary course of the Debtors' business and (ii) making one or more related material cash payments that are outside of the ordinary course of the Debtors' business to any party on account of prepetition amounts authorized under this Final Order.

19.     Within 30 days of the prior month's end, the Debtors shall deliver to the Creditors' Committee a report of (i) all Intercompany Transactions and (ii) any transactions effectuating a setoff between Debtors.

20.     Nothing contained in the Motion, the Supplemental Motion, or this Final Order, nor any payment made pursuant to the authority granted by this Final Order is intended to be or shall be construed as (i) an admission as to the validity of any claim against the Debtors, (ii) an agreement or obligation to pay any claims, (iii) a waiver of the Debtors' or any appropriate party in interest's rights to dispute any claim, (iv) a waiver of any claims or causes of action which may exist against any creditor or interest holder, or (v) an approval or assumption of any agreement, contract, program, policy or lease under section 365 of the Bankruptcy Code.

21.     Notice of the Motion and Supplemental Motion is adequate under Bankruptcy Rule 6004(a).

22.     Notwithstanding Bankruptcy Rule 6004(h), this Final Order shall be immediately effective and enforceable upon its entry.

23.     The Debtors are authorized to take all reasonable actions necessary to effectuate the relief granted in this Final Order.

24.     This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Final Order.

Dated: _____, 2023
          New York, New York

                                          _____
THE HONORABLE MICHAEL E. WILES
UNITED STATES BANKRUPTCY JUDGE

**<u>Exhibit B</u>**

**Healy Declaration**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------X

|  |  |  |
|---|---|---|
| In re | : | **Chapter 11** |
|  | : |  |
| **SAS AB,** *et al.*, | : | **Case No. 22-10925 (MEW)** |
|  | : |  |
| Debtors.[1] | : | **(Jointly Administered)** |

---------------------------------------------------------------X

**DECLARATION OF MICHAEL HEALY**
**IN SUPPORT OF SUPPLEMENTAL MOTION OF DEBTORS FOR**
**FINAL ORDER (I) AUTHORIZING DEBTORS TO (A) CONTINUE USING**
**EXISTING CASH MANAGEMENT SYSTEM AND CHECK STOCK,**
**(B) HONOR CERTAIN RELATED OBLIGATIONS, AND (C) CONTINUE**
**INTERCOMPANY TRANSACTIONS AND PROVIDE ADMINISTRATIVE EXPENSE**
**PRIORITY FOR POSTPETITION INTERCOMPANY CLAIMS AGAINST DEBTORS,**
**AND (II) WAIVING COMPLIANCE WITH REQUIREMENTS OF 11 U.S.C. § 345(b)**

I, Michael Healy, make this declaration under 28 U.S.C. § 1746:

1.     I am a Senior Managing Director at FTI Consulting, Inc. ("**FTI**"), the financial advisor to the debtors and debtors-in-possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"). I submit this declaration (the "**Declaration**") in support of the *Supplemental Motion of Debtors for Entry of Final Order (I) Authorizing Debtors to (A) Continue Using Existing Cash Management System and Check Stock, (B) Honor Certain Related Obligations, and (C) Continue Intercompany Transactions and Provide Administrative Expense Priority for Postpetition Intercompany Claims Against Debtors, and (II) Waiving Compliance with Requirements of 11 U.S.C. § 345(B)* (the "**Motion**"), filed contemporaneously herewith.[2]

---

[1] The Debtors in these chapter 11 cases are SAS AB, SAS Danmark A/S, SAS Norge AS, SAS Sverige AB, Scandinavian Airlines System Denmark-Norway-Sweden, Scandinavian Airlines of North America Inc. (2393), Gorm Asset Management Ltd., Gorm Dark Blue Ltd., Gorm Deep Blue Ltd., Gorm Sky Blue Ltd., Gorm Warm Red Ltd., Gorm Light Blue Ltd., Gorm Ocean Blue Ltd., and Gorm Engine Management Ltd. The Debtors' mailing address is AVD kod: STOUU-T, SE-195 87 Stockholm, Sweden.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

2.      Except as otherwise indicated herein, the facts set forth in this Declaration are based upon my personal knowledge, my review of relevant documents, information provided to me by the Debtors, or my opinion based upon experience, knowledge, and information concerning the Debtors' operations and the aviation industry.  If called upon to testify, I would testify competently to the facts set forth in this Declaration.

3.      I am not being specifically compensated for this testimony other than through payments received by FTI as a professional retained by the Debtors.  I am over the age of 18 and authorized to submit this declaration on behalf of the Debtors.

## Background and Qualifications

4.      I am a Senior Managing Director at FTI, a leading global business advisory firm with 121 offices worldwide and over 7,500 professionals.  I have more than 20 years of restructuring experience and have advised companies, lenders, creditors, corporate boards, and equity sponsors across a diverse range of industries, both domestically and internationally.  My experience includes advising on complex restructuring and turnaround situations in out-of-court restructurings and in formal bankruptcy proceedings.  Specific areas of my experience include business plan development, cash flow forecasting, cash management, development and implementation of cost reduction plans, negotiating restructuring plans, bankruptcy planning, and negotiating business and asset sales.  I have advised companies, lenders, and investors in a variety of industries and in select instances served as Chief Restructuring Officer, including for Speedcast International Limited, F+W Media, Inc., All American Group, Inc., and TransCentra, Inc.

## Debtors' Cash Management System and Efforts to Comply with Section 345(b)

5.      As set forth more fully in the Motion, the Debtors use their existing Cash Management System to collect, concentrate, and disburse funds generated through the Debtors' airline operations.  The Debtors' Cash Management System is comprised of approximately 300

2

Bank Accounts, the overwhelming majority of which are with SEB and Nordea.  Pursuant to certain Cash Pool Agreements with SEB and Nordea, the Debtors have established an organization-wide Cash Pool that facilitates the transfer of funds between the Debtors and their Non-Debtor Affiliates.  The Cash Pool is essential to the smooth functioning of the Debtors' business, as the Debtors and their Non-Debtor Affiliates differ significantly with respect to their cash generation and needs.  As of December 31, 2022, the Debtors held approximately $145 million in the Cash Pool, approximately $91 million in the Standalone Accounts (excluding the SANA Account), and approximately $287 million in the SANA Account.

6.      Because the Debtors' existing Cash Management System is integrated into the Debtors' global business operations and any disruption to the Cash Management System would cause substantial harm to the Debtors' business and estates, the Debtors sought, and received, an interim waiver of the requirements set forth in section 345(b) of the Bankruptcy Code pursuant to the Interim Orders.

7.      Notwithstanding the entry of the Interim Orders, the Debtors have pursued alternatives to come into compliance with section 345(b) of the Bankruptcy Code by obtaining a bond secured by the undertaking of a corporate surety with respect to the Bank Accounts maintained at SEB and Nordea.  Despite the Debtors' extensive efforts, which involved outreach to a broad pool of insurers in the Nordic, U.S., and international markets, the Debtors have been unable to locate a counterparty willing to provide such a bond.

8.      In light of the foregoing, my understanding is that the Debtors will be required to transfer their cash out of the Bank Accounts and into one or more Authorized Depositories in order to comply with section 345(b) of the Bankruptcy Code, unless the Court grants the Debtors a waiver of the requirements set forth in section 345(b) for "cause."

3

9.      Based on my knowledge of the Debtors, their operations, and the Cash Management System, I believe that requiring the Debtors to change bank accounts and establish a new Cash Management System with Authorized Depositories would cause substantial harm to the Debtors and their estates.  The Debtors' existing Cash Management System is designed to seamlessly and efficiently perform vital cash management services for the Debtors and their Non-Debtor Affiliates, including the transfer of funds, processing of consumer and business transactions, payment of ordinary course business expenses, conversion of revenues into local currencies, and execution of foreign exchange hedging transactions.  If the Debtors are not permitted to continue utilizing their existing Cash Management System, the Debtors may therefore need to revamp fundamental aspects of their business operations.  Moreover, I understand that the Cash Management System processes thousands of such transactions and transfers millions of legal tender of various currencies within and outside of the SAS enterprise on a daily basis. Accordingly, transferring the cash in the Bank Accounts to Authorized Depositories would pose a tremendous administrative burden, cause delays in making and receiving payments, and introduce new costs and inefficiencies into the Debtors' core business operations.

10.      Moreover, based on my knowledge of the Debtors and their operations, I believe that overhauling the Cash Management System would be an enormously complex undertaking and would require intensive efforts on the part of a substantial number of the Debtors' employees and advisors, detracting from their ability to focus on the Debtors' restructuring efforts. Indeed, because the Debtors' operations are so thoroughly intertwined with the Debtors' existing Cash Management System, this project would require much more than simply opening and closing bank accounts and wiring funds.  Rather, the Debtors would need to set up an entirely new

infrastructure for transmitting cash between various entities, paying ordinary course operating expenses in numerous jurisdictions, and consummating foreign exchange transactions.

11.     Additionally, I understand that the Treasury uses the Debtors' integrated, company-wide Cash Pool to manage and effectuate the flow of cash throughout the entire SAS enterprise on a daily basis.  I further understand that the Treasury actively monitors the Cash Management System for irregularities.  In the event of a financial irregularity or adverse event affecting a Bank Account, personnel in the Treasury are well-positioned to detect any such occurrence and act quickly to correct it by moving cash into other, unaffected Bank Accounts.

12.     Finally, I have reviewed the corporate credit ratings of SEB and Nordea issued by S&P and Moody's.  Based on my review of these ratings, I believe that SEB and Nordea are as financially sound, if not more so, than certain of the Authorized Depositories.  Accordingly, I believe that the Debtors' cash deposited with SEB and Nordea is not subject to any meaningful risk.

13.     In light of the foregoing, I believe that maintenance of the Debtors' existing Cash Management System—and a waiver of section 345(b) for cause—is indisputably in the best interest of the Debtors, their estates, and their creditors.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge, and belief.

Dated:  January 16, 2023
        New York, New York

*/s/ Michael Healy*
Michael Healy

5