**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------x
In re                                           :      **Chapter 11**
                                                :
**SAS AB,** *et al.*,                           :      **Case No. 22-10925 (MEW)**
                                                :
                        **Debtors.**            :      **(Jointly Administered)**
                                                :
----------------------------------------------------------------x

### DECISION GRANTING THE DEBTORS' FIFTEENTH, SIXTEENTH AND SEVENTEENTH OMNIBUS OBJECTIONS AND EXPUNGING CLAIMS BY FONDEN LIVE AND ITS INDIVIDUAL MEMBERS

A P P E A R A N C E S :

WEIL, GOTSHAL & MANGES LLP
New York, NY 10153
*Attorneys for Debtors and Debtors in Possession*
*SAS AB, et al.*
  By:  Gary T. Holtzer
       Kelly DiBlasi
       David Griffiths
       Lauren Tauro
       Robert Berezin

MORITT HOCK & HAMROFF LLP
New York, NY 10018
*Attorneys for Fonden Live*
  By:  Leslie A. Berkoff
       Allison J. Arotsky

**HONORABLE MICHAEL E. WILES**
**UNITED STATES BANKRUPTCY JUDGE**

The Fifteenth, Sixteenth and Seventeenth Omnibus Objections to Claims filed by Debtors

SAS AB and its debtor affiliates (ECF Nos. 1826, 1827 and 1828) relate to claims filed against

Scandinavian Airlines System Denmark-Norway-Sweden (the "**Consortium**") by former cabin

crew members who were once employed by the Consortium and who have collectively organized

under an association named Fonden Live.  Many of the claimants filed responses that are identified

and listed in Exhibit A to a Notice of Agenda filed on May 23, 2024. ECF No. 2602.[1]  The Debtors and Fonden Live made additional written submissions, and the Court held a hearing to consider the objections on May 28, 2024.  The parties agreed to the admission into evidence of four witness declarations and a number of exhibits.  One witness (a Danish attorney named Christian K. Clasen) was also cross-examined during the hearing.

### Background

The members of Fonden Live are beneficiaries of a foundation named Fonden til Pensionsforbedring for SAS Cabin Attendants i Danmark, or the Foundation for Pension Improvement for SAS Cabin Attendants in Denmark (the "**Fund**").  The Fund was originally established in 1974 pursuant to the terms of a collective bargaining agreement between the SAS Consortium and the Cabin Attendants Union (the "**CAU**").  The Fund has provided certain payments to retired cabin attendants under terms that have been amended from time to time.  The Fund determined some years ago that it did not have sufficient resources to continue payments at the levels it had previously made, and so a number of payment reductions have occurred over time. The members of Fonden Live contend that the Consortium is obligated to ensure that the Fund has sufficient funds to restore the full benefits that they expected to receive over their remaining lifetimes and to which their survivors might then be entitled.

In 2012, Fonden Live commenced a lawsuit on behalf of its members and against the SAS Consortium, asking that the Consortium be compelled to make additional payments to the Fund. Fonden Live argued that the Consortium had assumed a legally binding obligation in favor of the

---

[1]    The Seventeenth Omnibus Objection also sought to expunge a claim filed by Kathrine Wessel-Tolvig (Claim No. 887), but she is not a member of Fonden Live and the Debtors have informed the Court that they are withdrawing the objection as to her claim, without prejudice to such other objections to her claim that the Debtors may have.

Fund, and in favor of the individuals who received benefits through the Fund, to ensure that the members of Fonden Live received a lifetime set of defined benefit payments. The trial court (the Copenhagen District Court) considered various evidence and submissions and then denied the Fonden Live claims, holding that the SAS Defendants had fully complied with their obligations. Fonden Live then appealed to the Eastern High Court in January 2017.

On February 9, 2021, the Eastern High Court issued a judgment that affirmed the judgment in favor of the SAS Defendants and that rejected the contentions by Fonden Live that the SAS Defendants owed any further obligations to the Fund or to the Fund's beneficiaries. A copy of the decision by the High Court, and a certified translation of the decision, was submitted as Exhibit 1 to the Declaration of Christian K. Clasen, the Danish attorney who represented the SAS Defendants in the litigation brought by Fonden Live. The High Court Judgment is 169 pages in length, and it includes an exhaustive compilation and discussion of the history of the Fund, its governing documents, the relevant agreements between the Consortium and the CAU that described the Consortium's contribution obligations, prior legal discussions of the nature and characterization of the Fund under Danish law, prior statements as to how benefits would be paid and calculated, the obligation of the Fund's directors to approve benefits on no more than an annual basis, the intended use of earnings from Fund investments to cover benefit payments, the prior recognitions of the possibility that benefits might not be fully funded, and the testimony of witnesses on these points.

The High Court Judgment also set forth a detailed discussion of the contentions of the parties. In particular, it noted that Fonden Live had made the following contentions:

- That the payments owed by the Fund were an agreed "pension supplement" for which SAS should be treated as the sponsor;

3

- That the pension supplement constituted an integrated term of the relevant beneficiaries' employment;

- That the Fund itself should be deemed to be a company pension fund, and not (as it has historically been designated) as a support and relief foundation;

- That the imposition of the Fund as the paying entity did not release SAS, as the alleged pension sponsor, of its obligation to pay benefits;

- That the "decision-making power" of the Fund's board (*i.e.,* their power under the governing documents to approve payouts for only one year at a time) did not release SAS from its obligation, as an alleged sponsor, to pay lifetime benefits; and

- That even if only the Fund (and not SAS) made enforceable commitments to the beneficiaries, an identification between the Fund and SAS should be found to exist so that SAS should be held liable for any obligations owed by the Fund.

*See* High Court Judgment, pp. 142–159.  The Judgment summarized all of the evidence upon which Fonden Live relied in support of those contentions and all of the legal arguments that it had made. *Id*.

After considering all of these matters, the Eastern High Court rejected the Fonden Live contentions.  *Id*. at 163–9.  It held that the SAS Defendants had fulfilled all of their obligations under the relevant collective bargaining agreements with the CAU (which had included obligations to make certain contributions to the Fund) and that there was no basis in the collective bargaining agreements or local agreements to support the conclusion that the SAS Defendants had assumed any obligation to contribute additional funds or to ensure that the Fund had sufficient resources to make life-long payments to beneficiaries.  *Id*. at 163–6.  It further held that it had been clear that the Fund might have insufficient funds to pay supplements and that it had not been expressly or

impliedly agreed that the SAS Defendants would pay any additional amounts to the Fund if that were to occur. *Id*. at 167.

The Eastern High Court also rejected Fonden Live's contention that the beneficiaries of the Fund should be treated as the beneficiaries of lifelong pension promises made by the Consortium. The Court noted that "[n]o evidence has been adduced to prove that anyone, apart from [representatives of the CAU], communicated to members that the payouts from the [Fund] were life-long payments." *Id.* at 167. The High Court held that any statements by CAU representatives were "insignificant" to the outcome because there was no evidence that the SAS Defendants had participated in the relevant meetings or had done anything to create any legitimate expectation on the part of the beneficiaries that they would receive lifetime benefits or that the SAS Defendants would bear the financial burden of making sure that happened. *Id*.

In addition, the Eastern High Court considered and rejected the contentions by Fonden Live that the Fund should be treated as a pension fund for which SAS was a sponsor. The High Court held, based on the evidence, that the Fund was "established by agreement between SAS and CAU as an independent legal entity and approved as a support and relief foundation pursuant to section 52 of the Pensions Taxation Act," and that its bylaws and operations had been approved by the competent authorities. *Id*.

Finally, the Eastern High Court found it unnecessary to decide Fonden Live's arguments about an alleged "identity" between the Fund and the SAS Defendants. Fonden Live had argued that if the High Court were to hold that the Fund had made a pension commitment to the beneficiaries, then the SAS Defendants should be held liable for that commitment on an "identity" theory. However, Fonden Live had elected not to name the Fund as a defendant in the litigation. Since the Fund was not a party, the High Court was precluded from making any determination as

to whether the Fund itself had made commitments to the beneficiaries, which then further made it

unnecessary to consider whether the SAS Defendants could be liable on an "identity" theory.

Fonden Live sought permission to make a further appeal to the Danish Supreme Court, but

its request was denied.  The Eastern High Court Judgment is therefore final and not subject to

further appeal.

### The Parties' Contentions

The gist of the Debtors' objections is that the relevant claims have already been resolved

through the prior litigation in Denmark, which confirmed that the Debtors owe no further

obligations to the Fund or to its beneficiaries.  The individual claimants, and Fonden Live, have

acknowledged that their own litigation claims have already been resolved and that, as a result of

the High Court Judgment, the claimants and the Fund presently have no entitlement to any payment

by the Debtors.  However, Fonden Live contends that certain regulatory proceedings remain open

that in the future might give Fonden Live and its members the right to pursue claims.  They have

therefore asked that I "hold the Omnibus Objections in abeyance" until a relevant investigation by

the Danish Financial Supervisory Authority (the "**FSA**") has been completed.

More particularly, Fonden Live contends that in 2022 the FSA commenced an investigation

to determine whether the Fund had made pension promises to its beneficiaries and whether the

Fund should be reclassified as a pension fund subject to the FSA's supervision.  Fonden Live has

made two different arguments as to how the outcome of that investigation potentially could benefit

Fonden Live and its members.  In its written submission, Fonden Live argued that if the FSA were

to determine that the Fund had really been a pension fund then the FSA would have the authority

to direct the Consortium to provide additional financing for the Fund.  *See* Supplemental Response

of Fonden Live, ECF No. 2431 at ¶ 9.  It also argued that if the FSA were to determine that the

Fund had made pension promises to the beneficiaries, and if those were to give rise to financial claims by the beneficiaries against the Fund, then the members of Fonden Live allegedly could pursue claims against the Consortium based on the "identity" contentions that the Eastern High Court had found it unnecessary to reach. *Id*. at ¶¶ 17–19.

### Discussion

In its written submission, Fonden Live contended that the "claims" of its members actually still remain open and are not yet resolved because of the pendency of the FSA investigation. *Id*. at ¶ 4. This is not a correct characterization of where things stand. The evidence at the Hearing made clear that Fonden Live and its members may be interested in the outcome of an FSA investigation and may even have played a role in prompting it, but they themselves are not "parties" to any proceeding before the FSA and they have no "claims" that are pending before the FSA and that remain unresolved. As things presently stand, the claims that Fonden Live and its members were entitled to assert against the Debtors have been fully and finally resolved by the High Court Judgment.

To some extent, Fonden Live's contention is that the FSA might reach a different conclusion than the Eastern High Court reached, and that the FSA might decide (for regulatory reasons) that the Fund should be treated as a pension fund (with SAS as the sponsor) and that on that basis SAS should be obligated to make further financial contributions to the Fund. Legally, this strikes me as the equivalent of an argument by an individual plaintiff who has lost an antitrust suit that I should regard the claimant's antitrust claim as "unresolved" because the Federal Trade Commission might decide to pursue an antitrust challenge and that challenge might create rights that the claimant does not presently have. I do not think that reasoning is sound. Fonden Live and its members fully litigated their own claims and they acknowledge that at this moment they have

no rights to payment by the Debtors.  Since they have no rights to payment, their claims should be denied pursuant to section 502(b)(1) of the Bankruptcy Code.  11 U.S.C. § 502(b)(1).  If anything were to happen that arguably changed their rights, then their remedy would be to seek reconsideration of the disallowance of their claims pursuant to section 502(j) of the Bankruptcy Code.  11 U.S.C. § 502(j).

Fonden Live instead asks that I defer a ruling, in the hopes that the FSA might issue a ruling of some kind and in the hopes that such a ruling might permit Fonden Live and its members to pursue claims that they presently have no ability to pursue.  At a minimum, such a request for a deferral should be based on a showing that there is some likelihood that events actually will occur in the reasonably foreseeable future that will give rise to claims that Fonden Live and its members could assert.  The evidence at trial, however, utterly failed to make such a showing.

The FSA apparently began an investigation in 2022.  The limited evidence at trial showed that the FSA has not been willing to confirm or deny, to Fonden Live or to the Consortium, whether any particular proceeding is underway or whether the FSA is considering taking action of any kind.  One of the exhibits suggested that in late 2023 the FSA asked the Fund to respond to some unspecified questions, and further suggested that Fonden Live had seen the Fund's response.  However, no evidence was offered as to what the questions were or what the responses were.  The exhibit in evidence merely suggested that Fonden Live did not agree with the Fund's response, from which I can only draw the conclusion that the Fund itself did not agree with the conclusions that Fonden Live hopes the FSA will reach.

Fonden Live suggested that the FSA is on the brink of issuing a ruling of some kind, but no evidence was offered to support that projection, and the witness who testified (Mr. Clasen) offered credible testimony that before any ruling could be made the Fund would have to be notified

of a potential ruling and given a chance to respond, which would mean that an "imminent" ruling could not occur.

Nor is there any evidentiary support for Fonden Live's speculation that the FSA might order the Consortium to make further payments to the Fund. The evidence that was submitted to me showed that on at least two separate occasions representatives of the FSA informed representatives of Fonden Live that the FSA considers itself to be bound by the High Court Judgment and that no further action by the FSA would result in further payments by SAS. The representatives of Fonden Live to whom those statements were made have filed declarations in which they have not denied that they were given that information, and instead have merely argued that the FSA is not legally bound by "preliminary" statements of this kind and could change its mind.

Nor is there any support for Fonden Live's speculation that the FSA might take an action that would give beneficiaries an enforceable damage claim against the Fund. The limited exhibits that were submitted to me suggest that many outcomes would be possible even if the FSA were to determine that the Fund had made "promises" as to benefits that would be paid, and even if the FSA were to determine that the Fund should be regarded as a pension fund subject to FSA supervision. The most likely results if that were to happen seem to be that the Fund would be subject to different restrictions as to how it could invest its resources and as to how it would calculate benefits. One of the exhibits suggested that the most likely outcome (if the Fund were subjected to FSA supervision) is that the beneficiaries' rights to benefits would decrease.

Even if something were to happen that might give Fonden Live and its members a right to seek payments from the Fund – something Fonden Live utterly failed to show – no support was offered for the proposition that this might mean that the beneficiaries could pursue a claim against

the Consortium based on an "identity" theory. Fonden Live contended, in the Danish litigation, that the Fund had made promises to its members and that the Consortium should be liable for those promises on the theory that there was an identity between the Fund and the Consortium. Fonden Live could have named the Fund as a defendant in that prior litigation but it chose not to do so. I asked Mr. Clasen at the Hearing if, under Danish law, Fonden Live and its members might be precluded from pursuing an "identity" claim in the future, on the theory that they had previously raised it and had previously had the ability to pursue it but that (through their own fault) they had not procedurally done what was necessary to get a ruling on the merits. Mr. Clasen said that in his opinion Danish law would bar Fonden Live and its members from pursuing the "identity" theory that they might wish to pursue.

Nor did Fonden Live offer any support for the proposition that an "identity" claim would have any merit. The High Court Judgment held that the Fund had been established as an "independent" entity. The long history that is recited in the High Court Judgment shows that the Consortium and the CAU each nominated three board members of the Fund, and that the chairman of the board had always been a CAU nominee (not an SAS nominee). The High Court Judgment recites the manner in which the Fund was organized, the way its bylaws were regularly amended and updated, the fact that board meetings were regularly held and documented, the fact that the Fund had its own employees, counsel and consultants, the fact that the Fund kept its own books and records, and a host of other facts showing that the Fund was properly organized and operated as a legally distinct and separate entity. Fonden Live should have offered contrary evidence, and made a contrary legal showing as to the potential merits of a hypothetical "identity" claim, but it did not do so.

Finally, there would be no equity to the relief that Fonden Live seeks. This case has been pending for nearly two years. There are untold numbers of creditors who have been waiting for the confirmed plan of reorganization to become effective and whose recoveries, on their legitimate and allowed claims, have been deferred. If I were to defer a ruling on the Fonden Live members' claims, the effect would be that a reserve for the disputed claims would be required, which would affect the timing and the amounts of the recoveries that other creditors are entitled to receive.

If (as Fonden Live has contended) some action by the FSA truly is imminent, and if (as Fonden Live hopes) such an action somehow gives rise to rights that presently do not exist, then Fonden Live and its members can always seek a reconsideration of the disallowance of their claims pursuant to Section 502(j) of the Bankruptcy Code. *See* 11 U.S.C. § 502(j). For now, however, the Debtors have properly established that the claimants have no enforceable rights and that the claims should be disallowed pursuant to section 502(b)(1) of the Bankruptcy Code.

## Conclusion

For the foregoing reasons, the Debtor's Fifteenth, Sixteenth and Seventeenth Omnibus Objections will be granted and the relevant claims will be disallowed and expunged, with the exception of the claim identified in footnote 1, above. A separate Order will be entered that reflects this ruling.

Dated: New York, New York
May 31, 2024

/s/ **Michael E. Wiles**
Honorable Michael E. Wiles
United States Bankruptcy Judge