UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
In re:                                            :        Chapter 11
                                                  :
SAS AB, *et al.*,                                 :        Case No. 22-10925 (MEW)
                                                  :
         Debtors.                                 :        (Jointly Administered)
------------------------------------------------------------x

**DECISION REGARDING DEBTORS' THIRTY-SECOND AND THIRTY-FOURTH OMNIBUS OBJECTIONS INSOFAR AS THEY RELATE TO ADMINISTRATIVE EXPENSE CLAIMS FILED BY CAVIC 31 DESIGNATED ACTIVITY COMPANY AND CAVIC 41 DESIGNATED ACTIVITY COMPANY**

A P P E A R A N C E S:

WEIL, GOTSHAL & MANGES LLP
New York, New York
*Attorneys for the Debtors*
   By: David. N. Griffiths
       Gary T. Holtzer
       Kelly DiBlasi
       Lauren Tauro

WATSON FARLEY & WILLIAMS LLP
New York, New York
*Attorneys for CAVIC 31 Designated Activity Company and CAVIC 41 Designated Activity Company*
   By: John G. Kissane
       Celinda J. Metro

**HONORABLE MICHAEL E. WILES**
**UNITED STATES BANKRUPTCY JUDGE**

The Convention on International Interests in Mobile Equipment (the "**Cape Town Convention**") and its related Protocol on Matters Specific to Aircraft Equipment (the "**Protocol**") provide a mechanism for the international creation and registration of security interests and other interests in aircraft. Alternative A of Article XI of the Protocol contains provisions that, if adopted by a Contracting State, may govern the use of aircraft by borrowers or lessees who are the subject of insolvency proceedings. Alternative A does not automatically apply, as discussed below. In

cases where it does apply, however, Alternative A states that at the end of a designated waiting period a debtor must return an aircraft to the secured lender or lessor unless the debtor has cured all outstanding defaults (other than defaults represented by the existence of the insolvency proceedings) and agrees to perform its future obligations under the relevant agreements.

The Debtors filed their chapter 11 petitions in this Court on July 5, 2022. At that time the Debtors leased two aircraft (MSN 1660 and MSN 9173) from entities named CAVIC 31 Designated Activity Company and CAVIC 41 Designated Activity Company (collectively referred to as "**CAVIC**" for purposes of this decision).[1] In November 2022 the Court approved stipulations between the Debtors, CAVIC and other parties regarding the Debtors' continued use of the aircraft. ECF Nos. 572, 573. The Stipulations stated that the parties reserved their respective rights as to whether the aircraft were subject to the provisions of the Cape Town Treaty, the Protocol and/or Alternative A thereunder, without admitting the applicability of the same. They also agreed that:

- The waiting period under section 365(d)(5) of the Bankruptcy Code, and (to the extent it was applicable) the waiting period under Article XI of Alternative A to the Protocol, was extended through the end of a designated Extension Period;

- The extension of the waiting period did not constitute an election under Alternative A to cure defaults or to perform all future obligations; and

- In consideration for the extension of the waiting period, the Debtors would make monthly payments for the use of the aircraft. Those monthly payments were less than the amounts specified in the pre-bankruptcy leases and were based on the Debtors' assessments of market rents for the aircraft.

---

[1]   The actual lessor in one case was Wilmington Trust SP Services (Dublin) Limited as Owner Trustee, but CAVIC is the party with the economic interest.

*Id.* CAVIC reserved its right to argue that Alternative A was applicable; that during the extended waiting period the Debtors were legally obligated, under Alternative A, to pay the full rentals specified in the underlying leases (rather than the reduced amounts set forth in the Stipulations); and that the Debtors would also be obligated to pay post-petition administrative claims for failures to comply with return conditions and/or with maintenance provisions of the leases. The Debtors reserved their rights to oppose any such requests.

The Debtors ultimately rejected the pre-petition leases and they did so before the extended waiting periods expired. The Debtors later entered into a new lease for one of the aircraft, and CAVIC re-leased the other aircraft to another party.

CAVIC filed proofs of claim relating to the rejection of the leases and the Debtors' post-petition use of the aircraft. CAVIC contends that Alternative A is applicable to the leases and to the aircraft and that it required the Debtors, during the waiting period, to pay the full rental rates specified in the leases. CAVIC also contends that it is entitled to assert administrative expense claims with regard to the Debtors' alleged failures to comply with the return conditions for one aircraft and with maintenance requirements for another aircraft. The Debtors objected to these claims in their thirty-second and thirty-fourth omnibus objections to claims. The parties made numerous submissions in support of and in opposition to the objections (including the filing of expert witness reports) and the Court held a hearing on July 17, 2024.

Based on the evidence at the July 17, 2024 hearing, and the wording of Alternative A to the Protocol, the Court ruled in favor of the Debtors with regard to the proposed administrative expense claims that CAVIC had filed. The Court concluded that Article XI of Alternative A to the Protocol does not compel the results that CAVIC seeks for two reasons.

<u>First</u>, the evidence showed that Alternative A is not applicable to the relevant leases and aircraft. By its terms, Article XI of the Protocol (which includes Alternative A) "applies only where a Contracting State that is the primary insolvency jurisdiction has made a declaration pursuant to" certain other provisions of the Convention. Protocol, Article XI at ¶ 1. A "declaration" is the manner in which a country expresses its desire that a particular rule will have international effect. Under the Cape Town Convention and the Protocol, UNIDROIT is the official repository of such declarations. UNIDROIT notifies other countries when such a declaration has been made, and this process enables countries to determine with certainty whether other Contracting States have or have not declared that Alternative A has been adopted by a particular country and is intended by that country to have international effect.

The parties agree that for purposes of the Protocol the "primary insolvency jurisdiction" of a debtor is the place where the debtor has its center of main interests. They further agree that in this case the Debtors had their centers of main interest in Sweden. The expert witness report and testimony by Dr. Riz Mokal showed that Sweden has adopted Alternative A for purposes of its domestic law, but that Sweden has never made the declaration required by Article XI of the Protocol. In the absence of such a declaration, Alternative A (as adopted domestically by Sweden) has no international effect and is not applicable in this US bankruptcy case.

CAVIC argued at the hearing that member countries of the European Union are prohibited by EU law from issuing a declaration of the kind specified in Article XI of the Protocol. If that were the case, however – and if no alternative existed – it would still mean that Alternative A could not be applied in this case. Actually, the expert testimony of Dr. Mokal, and the official commentaries to the Protocol, made clear that there is an alternative: UNIDROIT will accept a "notification" from an EU member country in lieu of a formal "declaration," so long as the

"notification" otherwise conforms to the requirements that a declaration must meet. However, Sweden has not provided such a notification.

While CAVIC halfheartedly suggested at the hearing that I should somehow find that Sweden's domestic adoption of Alternative A was sufficient, that would be contrary to the express terms of Article XI of the Protocol, which states that a declaration is necessary to give international effect to a country's adoption of Alternative A. Furthermore, the evidence showed that UNIDROIT is intended to be the official source of information as to whether a particular country has adopted Alternative A with the intent of giving it international effect. The official compilations by UNIDROIT, and Dr. Mokal's correspondence with UNIDROIT, confirm that Sweden has not done so. CAVIC cited to a website entry that vaguely hinted that something other than a formal declaration might suffice, but it did not offer any evidence that UNIDROIT has actually recognized Sweden as having made the necessary declaration or notification or that would be sufficient to contradict the official statements and compilations cited in Dr. Mokal's report.

<u>Second</u>, even if Alternative A were applicable it would not have the effect that CAVIC contends. Alternative A provides that at the end of the waiting period a debtor must return an aircraft, unless *at that time* the debtor agrees to cure defaults and to make future payments in accordance with the terms of the applicable lease or security agreement. However, in these cases the waiting period was extended, and the Debtors never made the "election" that would have triggered a post-petition obligation to make the full lease payments. Instead, the Debtors rejected the relevant leases before the waiting period expired. There is nothing in Alternative A that specifies the claims that a lessor may assert for the use of aircraft during a waiting period, and nothing that specifies the priority of such a claim (i.e., whether it would be regarded as a post-petition administrative obligation or a prepetition general unsecured claim).

CAVIC argued at the hearing that the waiting period under Alternative A was sixty days and that the period had already expired before the court-approved stipulations were entered in November 2022. However, CAVIC agreed in those Stipulations that (a) the waiting periods were extended and had not expired, and (b) that the Debtors had not made an "election" to cure defaults and to make full payments in accordance with the leases. Any suggestion that the Debtors did so would be contrary to the parties' express agreements.

CAVIC also argued that under paragraph 10 of Article XI, Alternative A to the Protocol "[n]o obligations of the debtor under the agreement may be modified without the consent of the creditor." The issue here, however, has nothing to do with any "modification" of the leases. The issue before the court is how to characterize and classify the claims that are based on the Debtors' failure to make the full lease payments that were due. CAVIC agrees that most of its claims to recover rents following the rejection of the leases are prepetition general unsecured claims, and that this categorization of its claims does not constitute a "modification" of the leases. The relevant question presently before the Court is not what the leases called for (which is not disputed), but what amounts are entitled to be treated as administrative expense obligations rather than as prepetition general unsecured claims. The Debtors contend that under US bankruptcy law an administrative expense claim is owed during the waiting period only to the extent of the actual rental market value of the aircraft, and not for the full amounts specified in the prepetition leases.

The report by Dr. Mokal, and the extensive quotations therein from the official commentaries to the Protocol, make clear that the remedies in Alternative A are "object-related." They require the return of aircraft at the end of a waiting period *unless* at that time there is a commitment to honor the pre-bankruptcy lease. There is nothing in Alternative A that specifies the payments that a debtor must make *during* the waiting period. Nor does Alternative A specify

the classification or priority that should be assigned to any claim that the lessor may have for differences between the contracted rental rates and the actual payments that are made during a waiting period. Those matters are left entirely to the bankruptcy law of the jurisdiction where the bankruptcy case is pending.

CAVIC has cited no authorities to the contrary. It relied on some authorities that confirmed that full payments under a lease must be made *if and when* a debtor chooses to retain an aircraft at the end of a waiting period, but it cited no authorities that dealt with the situation presently before this Court. The Official Commentaries (compiled in Dr. Mokal's declaration) are quite clear in confirming that claims for payment with respect to the waiting period, and the classification and priority of such claims, are left to the laws of the jurisdiction where the bankruptcy case is pending.

CAVIC also argued at the hearing that if SAS were the subject of an insolvency proceeding in Sweden it would have been required to make full lease payments. But CAVIC's own expert witness admitted, under my questioning, that this would only have been the result of the application of other provisions of Swedish law, and not due to the application of Alternative A or any other rule that would have international effect.

The Debtors acknowledge that they failed to make the final payments due under the Stipulations and that CAVIC is entitled to administrative expense claims of $375,000 with respect to MSN 1660 and $435,000.00 with respect to MSN 9173. For the reasons stated above, CAVIC's requests that it be allowed an additional administrative expense claim for the difference between the stated lease rentals and the amounts specified in the retention stipulations is denied.

CAVIC also has asked for administrative expense treatment of a contractual "end of lease" maintenance payment of $5.5 million with respect to the aircraft numbered MSN 9173. That request also is denied. That obligation by its terms was triggered by the rejection of the lease, not

by the use of the aircraft during the waiting period, and so any obligation would be a pre-petition unsecured claim. 11 U.S.C. § 365(g)(1). Foreign courts apparently have reached this same conclusion in other cases. *See, e.g., VB Leaseco Pty Ltd (administrators appointed) v. Wells Fargo Trust Company, National Association (trustee)* [2020] FCAFC 168 (Austl.) (holding that Alternative A and section 10 thereof did not require compliance with "return conditions" as administrative obligations where an aircraft was returned prior to the end of the waiting period).

The Debtors contended that the amounts that they agreed to pay during the waiting periods represented the fair market rental values for the use of the aircraft. CAVIC contended that certain other amounts (including maintenance reserves for MSN 1660 and legal expenses incurred after the bankruptcy filing date) also should be allowed as administrative expenses. CAVIC further contended that the amounts specified in the stipulations did not necessarily represent the true values of the aircraft. I gave CAVIC the opportunity to have a further hearing to the extent that it wished to present further evidence or argument as to these points, but the parties informed the Court that they had reached an agreement as to the calculation of the claims following the initial hearing and that no further hearing would be required.

Separate Orders will be entered that reflect these rulings and the parties' agreements.

Dated: New York, New York
      July 22, 2024

                                                    <u>s/Michael E. Wiles</u>
                                                    Honorable Michael E. Wiles
                                                    United States Bankruptcy Judge